Good morning, Your Honors, and may it please the Court, I'm Joseph Wiseman, Counsel for Mr. Jose Cabada. As Mr. Warner indicated, I guess I have an inevitable position of taking most of the time in these oral arguments, so what I'd like to do is reserve, let's say, two minutes of my time for rebuttal, so I will go for eight minutes once the Court has additional questions. All right. Please watch the clock. I'll try to help. Thank you very much. Your Honors, as the Court knows from the briefing, the appellants raise three distinct issues on appeal. I just want to go through them as I've indicated them in my opening brief for Mr. Cabada. Firstly, the issue of the wiretap assignment in the Eastern District of California. There is two prongs to that argument. The first prong of that argument is that the actual process, which was engrafted in a memorandum that the Eastern District submitted, the actual process of allowing the same judge who approves the Title III wiretap application and later is assigned to the case, to adjudicate the case, is a violation of the appellant's due process rights in general. It's the general argument in terms of due process. The test, as I understand the test, would be one, if actual prejudice has been shown, or if there is a question about a potential for bias under a due process analysis. And I think, from my, the appellant's view, is that the potential for bias in the way in which these applications in the Eastern District are assigned is the crux of the due process argument. So we have this case from the Second Circuit, Judge Sotomayor and U.S. v. Giordano, that's addressing the same argument and says, cites judicial rulings alone almost ever constitute a valid basis for a bias or partiality motion. Fairly well-reasoned opinion. Why is that wrong? I think it's, well, and that's the opinion that Judge Garcia relied upon when he denied the motion. I think that's, that is a reasonable, or at least if the Court were to decide that this, we cannot prevail on this argument, that would be reasonable. I certainly know that, and I recognize that this is a matter of first impression in this circuit, and most of the other circuits have ruled against the argument, as Your Honor just pointed out, in Giordano. But I think the, I don't, my recollection on that case is that the, Judge Sotomayor did not address the issue of the potential bias or the appearance. And that's what I'm concerned about in terms of the integrity of this process, where you have essentially a situation where it's the same judge as I mentioned before. And I think that for the point of view of the integrity of the judicial process, from a constitutional point of view, I believe that is improper and this Court should consider that. The second point with respect to the assignment issue is that in the Court, in the, before Judge Garcia, the defendants did file a motion asking Judge Garcia to recuse himself, and he decided not to do so. And I think my view is that was an abuse of his discretion insofar as the test is, again, as I said a moment ago, is an objective test under 28 U.S.C. 455, which would be whether a reasonable person with knowledge of all the facts that conclude that the judge impartiality might easily be questioned. So I think lawyers and all of us who practice, judges included, maybe that's a captive audience. Maybe the analysis should be what the average person would conclude when looking at a situation where the same judge who authorizes the title brief tap is the same judge who, in fact, rules later on any challenge. And in this particular case, Judge Garcia was, in fact, called upon to rule upon an attack on the wiretap. For example, he ruled according to the record in this case. He heard several issues relating to the wiretap called related to my client, Mr. Gavada, including the expertise necessary by the witnesses that would testify as to identifying the voices on the taps, whether to allow questions regarding confusion by the officers over the names of the people who were allegedly or who were actually on the wire, and the proper form in which to present the wiretap calls to the jury. So that's the conundrum. And I think that's the problem because you have the same judge who authorizes the tap and is then ruling upon the invisibility of certain information that comes from the tap. The government contends, one of the things the government contends is that there is basically the argument was waived because we didn't move the defendants in the court below, but I don't think that that is the standard to preserve the issue. One doesn't have to raise a motion to suppress. The motion to recuse, which was, as I mentioned a moment ago, was denied, is sufficient to preserve that issue. So unless Your Honors have any particular questions about that issue, I wouldn't mind, in light of the time, I'd like to move on to the second argument that we make on appeal. And that is the closing arguments included vouching by the government lawyer in proper testimony, which this Court, in my view, should reverse. And unfortunately, in this particular case, I'm dealing with a plain error standard because it wasn't objected to in the court below. But nevertheless, with a plain error standard, look in and actually what happened in the case. And the actual arguments that were made, I think the appellants have reached the plain error standard and gone beyond. And it's important, Your Honors, to, in my view, is to keep in mind the timeframe of what we believe was improper vouching. They occurred in closing arguments and in rebuttal. What's your strongest claim? I mean, I looked at the standard in NECOCHEA. Right. Which it says, either placing the prestige of the government behind a witness through personal assurances of the witness's veracity. And I didn't see anything like that. And then the second one was, or suggesting that information not presented to the jury supports the witness's testimony. And I didn't see anything like that. So what is your best quotation for either of those two prongs? Well, for example, the government used, and it's a bit of a subtlety, Your Honor, because there's nothing directly that addresses what Your Honor is asking. But if you look at, if one were to look at the context of the statements, I think these standards met. For example, the first one that I'll point to is in quoting the counsel for the government, this drug trafficking organization's family network. And while this is not a clean rendition of the facts from the timeframe, there are essentially what the government is saying. This is a reporter, RT1638 at ER2. The government is suggesting that there's more evidence out there than the government is presenting in court. And therefore, it suggests that the government had far more evidence that it could have presented, but did not present in court. But so the standard says information not presented to the jury supports the witness's testimony. So where do you see that in that quote? Well, the testimony in this case came from cooperating witnesses and other individuals. And what I'm saying is so when the government lawyer says, so the only evidence related to them and to non-conspirators, excuse me, the only evidence related to them and no conspirators are presented to you, that's in a reporter's transcript, again, 1638. I think what that does is it suggests that there, as I said before, more evidence about the organization. And therefore, that's information. The government is saying we have more information. We're not giving it to you, but it does bolster, my argument, Your Honor, is that it bolsters the rest of the government's case. Your eight minutes, actually nine minutes is over.  Well, let me continue talking because I think my colleague is not going to take up that much time. Let's just have a couple more minutes, Your Honor, if I may. The important thing for Mr. Cabada is that, as the case law says, one of the issues this Court is to look at in determining whether there was improper vouching is the closeness of the case. And if you look simply at Mr. Cabada and you look at what the evidence against him is, was rather, was presented by the government, the vouching and the improper comments by the government really focused and affected Mr. Cabada. Because if you remove those improper vouching comments, then there's very little evidence against Mr. Cabada. Didn't they find in a search, I have a note, that they found loaded handgun trucks and cars with hidden compartments and cocaine concealed? This one. Is that correct? That is quite correct. Okay. The government's presentation of the evidence is this was rather elaborate. I did not try the case, but reading the record, there was an elaborate and rather sophisticated drug trafficking organization, for lack of a better description. There's no question about that. The question is, did the government err in presenting vouching and improper arguments to the jury? Lastly, Your Honor, if I may move on to the last issue, which is the juror bias. As the Court knows, this is a situation late in the trial. Juror number 11 comes forward and comments to another juror about an incident that happens to her son and daughter. But that was two weeks, I mean, almost two weeks elapsed, elapsed before she reported. I actually went back and personally read the record. I think the district judge did an excellent job of talking to all the jurors. And he concluded, based on their comments, that none of them could say that this was really connected to the Gavada trial. And out of an abundance of caution, when the first juror whose son and daughter-in-law were implicated in that mentioned it to other jurors,  so she mentioned it. And then the district judge did, I think, the very best thing he could have done. He actually interviewed all the jurors, starting with the ones that were most involved. And I read that, and it seemed like he did a good job. So how is that a basis for a reversal? Your Honor, my view is this. I think Judge Garcia did a yeoman's job in structuring questions to the juror. My position, however, is that the questions were not, did not comport with what the law requires, what the circuit's precedents require. In that, he was inquiring about factually what happened, as opposed to an insightful inquiry as to the potential effect of these instances. And by the way, there were two in the record, because apparently there was another juror who mentioned something to that. She saw somebody who was quite unusual, and she suspected something. And then Juror 11 chimed in and talked about her incident. But her situation was even more remote. She looked outside her window and saw a car there. She never got up and never investigated it, and it was a very isolated incident. Understood. But again, Your Honor, I'm suggesting that what Judge Garcia did not do is properly and adequately probe the potential effect of these instances on the jurors, as opposed to spending a good deal of time trying to decipher what actually happened, what the event was. Well, it wasn't even clear to me that this reached the standards set out in Angulo. It says, a private communication, contact, or tampering directly or indirectly with the juror during a trial about the matter pending before the jury. And here, there was nothing. Anything that happened was not either directly or indirectly with the juror or about the matter pending before it. So it seems a little bit remote to me. Well, Your Honor, but the effect, the potential effect on the jurors, in my view, is significant, in spite of the holding of Angulo, because Judge Garcia did inquire, and there was a lot of colloquy between the potential jurors. I mean, in Remmer, somebody comes up and says to the juror, there's some easy money for you if you vote the right way. I mean, that seems pretty much worlds apart from anything that happened in this case. Again, and I think there's a distinction there between Remmer and Angulo in here. But nevertheless, my view is that Judge Garcia should have focused more on the effect that these incidents had. Because if one looks at the record and the colloquy that he had with these jurors, quite a few of them were rather concerned about this effect. There was a lot of colloquy about, well, would this affect you? Would it not affect you? And so I think that that should have been more fully explored, because it was significant. Thank you, Your Honor. If I may just reserve a minute or two. I guess it depends on your co-counsel. Very well. That's fine. Court, please. Excuse me. I've got some tough things today. Court, please. My name is Arthur Parling. I represent... Sorry. Sorry, I'm just not sure you can hear me. Oh, I'm sorry. Take your time. I represent Mr. Barraza. Case was Barraza. And I would... Mr. Parley, I can't hear you. I'm sorry, Your Honor. I'm having great difficulty. I came in feeling ill, and I'm just... Do you want to submit? Or do you want to take a few minutes? I would like to say that basically the main situation is that the conviction here was based on two informants. And that's the evidence that there is in the case in the informant. And the other one received a lesser sentence. The other... Sir, do you want us to call a doctor for you? Are you... I'm going to have to submit it, Your Honor. I'm sorry. I'm very sorry. Okay, we'll hear from the government. Go ahead. Good morning, Your Honors. Jill Thomas and Justin Lee on behalf of the United States. May it please the Court. This appeal does not raise serious concerns about guilt or innocence. Extensive evidence supported each defendant's conviction. Turning to the issue that Mr. Wiseman last talked about, which was the jury misconduct, the Court picked up on the issue that the government raised in its brief and will now raise before the Court. This doesn't even amount to jury tampering. So the presumption shouldn't even apply because this is such a remote incident that there was no contact with the juror. Juror number 11 never had contact with this individual. It was 50 miles away, and the incident happened the day after she had dinner with her son and daughter-in-law. And so we would argue that the juror misconduct is the proper standard, but even if it were raised to the level of jury tampering, the contact was harmless beyond a reasonable doubt. And if the Court doesn't have any questions on any of the other issues, the government submits on the brief. Judge Noonan? No questions. Okay. Thank you. Thank you, Your Honor. Can you pause this because we need the other attorney to come back for rebuttal, Mr. Wiseman? Okay. Oh, no. We'll have a recess for it. Yes, one of the litigants is ill, so we will have a recess and then a return when he's available for rebuttal.
judges: Daniel, Noonan, Ikuta